UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JONATHAN STEELE,

     Petitioner,

v.                                    Case No. 6:10-cv-53-Orl-31GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

     Respondents.

_____

## <u>ORDER</u>

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 11).  Petitioner filed replies to the response (Doc. Nos. 13 & 21).

Petitioner alleges six claims for relief in his habeas petition: (1) counsel rendered ineffective assistance by failing to object to the trial court imposing victim injury points at Petitioner's re-sentencing, (2) counsel rendered ineffective assistance by failing to raise various objections as his re-sentencing, (3) Petitioner is entitled to retroactive application of Section 776.013, Florida Statutes, (4) the State withheld material records and exculpatory evidence, and (5) counsel rendered ineffective assistance by failing to object to the trial

court's failure to obtain and review a presentence investigation report prior to re-sentencing.  For the following reasons, the petition is denied.

## I.   *Procedural History*[1]

Petitioner was charged by information with second degree murder .  A jury trial was conducted in 1997, and Petitioner was found guilty as charged.  The state court sentenced Petitioner to a 410-month term of imprisonment.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.  Petitioner filed various post-collateral motions which were all denied.  Thereafter, Petitioner filed a habeas petition in the federal court in case number 6:00-cv-455-Orl-22, which was denied on August 10, 2000.  (Case No. 6:00-cv-455-Orl-22 at Doc. No. 41.)

Petitioner subsequently filed a motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure.  The motion was granted, and the trial court re-sentenced Petitioner to a 210-month term of imprisonment to be followed by twenty years of probation.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam.*  Petitioner filed a petition for review with the Florida Supreme Court, which dismissed the petition for lack of jurisdiction.  Petitioner filed a petition for writ of certiorari with the Supreme Court of the United States, which was denied on February 21, 2006.  Petitioner filed a petition for rehearing, which was denied on April 17, 2006.

---

[1]The following procedural history does not include numerous state court proceedings initiated by Petitioner as those proceedings are not relevant to the instant habeas petition.

Petitioner filed a mandamus petition in the Florida Supreme Court on November 9, 2005.  The Florida Supreme Court transferred the petition to the trial court, which directed the petition to be treated as a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.  Petitioner filed an amended Rule 3.850 motion, which was denied.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.  Mandate was issued on April 1, 2009.  Petitioner filed the instant petition on January 6, 2010.[2]

## II.    *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2]Respondents assert that the instant petition is untimely.  However, Respondents did not include in their calculation the period during which Petitioner's petition for writ of certiorari was pending in the Supreme Court of the United States.  Excluding this time, the Court concludes that the instant petition was timely filed.

Likewise, Respondents contend that many of Petitioner's claims are successive and should have been raised in Petitioner's first federal habeas petition.  However, in *Magwood v. Patterson*, 130 S. Ct. 2788 (2010), the Supreme Court held that the AEDPA's bar on successive habeas corpus applications applies only to a successive application challenging the same state court judgment.  In the instant case, Petitioner was re-sentenced, and thus, a new judgment was entered.  As such, pursuant to *Magwood*, Petitioner's claims are not barred as successive by the AEDPA.

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall

4

have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id*. at 687-88.  court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   Analysis

#### A.   Claim One

Petitioner asserts that counsel rendered ineffective assistance during his re-sentencing. Specifically, Petitioner maintains that counsel failed to object to the imposition of victim injury points on the bases that it violated due process and such a finding had to be made by a jury pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[4]

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied the claim.  (App. F at 170-74.)  The state court reasoned that pursuant to Florida law, when a defendant is convicted of second degree murder,  victim injury points are properly added to the guidelines score sheet even though the victim's death is included in the offense level. *Id*. at 171.  The state court further noted that Petitioner's sentence did not violate *Apprendi*

---

[4]Petitioner further states in relation to claim one that (1) the State failed to notify him that it intended to depart upward from the sentencing range, and (2) there was no pre-sentence investigation report or written reasons provided for departing from the guideline sentence.  It is not clear if Petitioner intended these claims to be ineffective assistance of counsel claims. Regardless, these arguments are without merit.  As will be discussed more fully hereinafter, Petitioner was not sentenced outside of the sentencing guidelines and a pre-investigation report was not required.

as it was less than the permissible statutory maximum.  *Id*. at 172.

Petitioner has failed to demonstrate that the state court's determinations are contrary to, or an unreasonable application of, clearly established federal law.  Florida courts have consistently held that victim injury points may be assessed even when bodily injury is an inherent element of the offense.  *See, e.g., Trombley v. State*, 754 So. 2d 121, 124 (Fla. 5th DCA 2000) (concluding that victim injury points should be assessed for conviction for offense of DUI with serious bodily injury); *Wendt v. State*, 711 So. 2d 1166, 1167 (Fla. 2d DCA 1998) (holding that assessment of victim injury points for offense of DUI manslaughter did not result in double jeopardy violation).  This Court is not aware of any federal prohibition on the assessment of victim injury points in sentencing for offenses that inherently include death or injury, such as second degree murder.  As such, given the law, counsel cannot be deemed deficient for failing to object to the assessment of victim injury points as a violation of double jeopardy nor has Petitioner shown he was prejudiced by counsel's failure to do so.

Likewise, Petitioner's contention that counsel was ineffective for failing to object to the imposition of victim injury points because the jury did not make a finding that the victim was injured is without merit.  The Court initially notes that the jury convicted Petitioner of second degree murder, which necessarily required a finding that Petitioner caused the death of the victim, *i.e.*, victim injury.  *See* Fla. Stat. § 782.04(2).  Moreover, to the extent Petitioner maintains that his sentence violates *Apprendi*, this argument is unavailing. The United States Supreme Court has held that "the Federal Constitution's jury-trial

guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Cunningham v. California*, 549 U.S. 270, 274-75 (2007) (citing *Apprendi*, 530 U.S. 466).   Pursuant to Section 782.04(2), Florida Statutes, second degree murder is a first degree felony which carries a maximum penalty of life in prison.   Thus, Petitioner's sentence does not violate the Sixth Amendment.   Accordingly, counsel was not deficient for failing to raise this objection nor was Petitioner prejudiced, and claim one is denied pursuant to Section 2254(d).

### B.      *Claim Two*

Petitioner asserts that counsel rendered ineffective assistance by failing to raise various objections at re-sentencing.   Specifically, Petitioner contends that counsel should have objected to (1) the trial court's departure from a guideline sentence by including a twenty-year term of probation, (2) the lack of notice for the guideline departure, and (3) the trial court's failure to conduct a probation and special condition hearing.

Petitioner raised this claim in his Rule 3.850 motion.   The state court denied relief. (App. F at 174-75.)   The state court reasoned that the imposition of probation without advance notice did not constitute an upward departure from the guidelines and that Petitioner's sentence of a seventeen-year term of imprisonment followed by a twenty-year term of probation did not exceed the statutory maximum of life.   *Id*. at 174-75.   The state court noted that the trial court may impose probation without giving written or oral reasons except when imposing special conditions.   *Id*. at 176.   The state court concluded,

8

therefore, that Petitioner could not establish either deficient performance or prejudice based on counsel's failure to object to his sentence on these bases. *Id*. at 175-76.

Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, federal law. The trial court did not impose a sentence that departed from the guidelines as a conviction for second degree murder was subject to a maximum term of life in prison. The trial court sentenced Petitioner to a seventeen-year term of imprisonment to be followed by twenty years of probation. Florida courts have explicitly rejected the argument made by Petitioner in this claim. *See, e.g., Robinson v. State*, 37 So. 3d 921, 922 (Fla. 2d DCA 2010) (considering a sentence for a conviction for second degree murder committed after July 1, 1995, and holding that "the trial court could have sentenced [the defendant] to 'a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment.' Thus[,] [the defendant's] sentence of thirty years' [sic] prison followed by probation for life does not violate the applicable sentencing statute and is therefore a legal sentence."). As such, the trial court in this case was not required to provide notice or written reasons for its departure, and counsel had no basis to object to Petitioner's sentence on these bases. Accordingly, Petitioner has not established either deficient performance or prejudice, and this claim is denied pursuant to Section 2254(d).

### C. Claim Three

In claim three, Petitioner contends that the self-defense instruction was erroneous for a variety of reasons. Specifically, Petitioner contends that he is entitled to retroactive

application of the 2005 amendment to Section 776.013, Florida Statutes (2005), the self-defense statute.  Petitioner further argues that if he is not entitled to retroactive application of the statute, then "imposing 'duty to retreat' jury instructions on [a] homeowner exercising the right to protect life-property from burglars violate [sic] due process".  (Doc. No. 1 at 15.)  Petitioner also maintains that the trial court improperly instructed the jury on the forcible felony exception to the self-defense instruction and improperly included the "meet force with force" language in the self-defense instruction.

Respondents contend that the instant claim is procedurally barred because it should have been raised on direct appeal and the state post-conviction court found the claim to be procedurally barred.  The record reflects that the state post-conviction court determined that Petitioner's claim of trial court error based on instructing the jury as to the allegedly improper self-defense instruction is one that "could have been, should have been, or actually was raised on direct appeal."  (App. F at 166.)  Review of Petitioner's pro se brief on direct appeal from his re-sentencing establishes, however, that he argued that the trial court improperly instructed the jury that Petitioner had a duty to retreat before using deadly force.  (App. B at 52-56.)  As such, this portion of the claim is not procedurally barred from review.  Nevertheless, Petitioner did not raise all of the arguments asserted in claim three on direct appeal, or if he did, he did not raise them as federal claims.  For instance, Petitioner did not contend that the trial court improperly instructed the jury on the forcible felony exception to the self-defense instruction.

One procedural requirement set forth in the AEDPA precludes federal courts, absent

exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)   (I)   there is an absence of available State corrective process; or
> >
> >       (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.  *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

In the instant case, Petitioner did not raise various portions of claim three in the state court, or if he did, he did not raise them on direct appeal or as federal claims. These portions of claim three are, therefore, procedurally barred from review by this Court as they either were not exhausted in the state court or were found to be procedurally barred by the state court. Thus, absent an exception to the procedural default bar, these portions of claim three are barred from review by this Court.

Petitioner has failed to demonstrate either cause or prejudice to overcome the procedural default. To the extent Petitioner contends that ineffective assistance of counsel serves as cause and prejudice to overcome the procedural default of these claims, he did not raise claims of ineffective assistance of counsel based on these issues in the state court. The claim of ineffective assistance of counsel must have been "presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."

13

*Murray v. Carrier*, 477 U.S. 478, 489 (1986).  A procedurally defaulted claim of ineffective assistance of counsel may not serve as cause to overcome the procedural bar of a separate claim, unless Petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of counsel claim.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Petitioner's claims of ineffective assistance of counsel were not presented to the state court, and Petitioner has not established cause or prejudice for his failure to do so.  Thus, Petitioner has not established cause to overcome the procedural default.  Furthermore, Petitioner has not demonstrated that he is actually innocent.  Accordingly, portions of claim three are procedurally barred from review by this Court.

Turning to the portions of claim three that are not procedurally barred, the Court concludes that Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, clearly established federal law.  Pursuant to Florida law at the time of the instant offense, to "avail himself of the defense of self-defense, [the defendant] was required to establish that his life was in imminent danger and he could not safely retreat."  *Jackson v. McNeil*, 2010 WL 732015, *10 (S.D. Fla. 2010) (citing *Soberon v. State*, 545 So. 2d 490 (Fla. 3d DCA 1989) (recognizing that a person under attack has a duty to "retreat to the wall" before taking a life, and that the person must have used all reasonable means in his power, consistent with his own safety, to avoid the danger and to avert the necessity of taking human life)).  Thus, prior to "October 2005, Florida required a person to retreat in most situations before deadly force could be employed."  *Id.* (citing Fla. Stat. § 776.013 (2005); *Smiley v. State*, 966 So. 2d 330 (Fla. 2007); *Jenkins v. State*,

942 So. 2d 910, 914 (Fla. 2nd DCA 2006)).  In 2005, the law concerning the duty to retreat was materially altered by statutory amendments. *See* Fla. Stat. § 776.013 (2005).  Florida law was amended to provide that

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Fla. Stat. § 766.013(3).  However, the Florida Supreme Court has held that Section 766.013 is not retroactive pursuant to the Florida Constitution.  *See Smiley*, 966 So. 2d at 336-37.

"The Supreme Court [of the United States] has held that the Constitution does not require a state's highest court 'to make retroactive its new construction of [a criminal] statute.'" *Graves v. Ault*, 614 F.3d 501, 512 (8th Cir. 2010) (quoting *Henry v. Ricks*, 578 F.3d 134, 140 (2d Cir. 2009) (quoting *Wainwright v. Stone*, 414 U.S. 21, 23-24 (1973)); *see also Messenger v. McQuiggin,* 2010 WL 2772312, *4 (E.D. Mich. 2010) (stating "[w]hether a new state rule or law applies retroactively is a matter of state law").  Petitioner has not cited to, nor is this Court aware of, any constitutional mandate or precedent from the Supreme Court of the United States prohibiting states from imposing a duty to retreat before using deadly force.  Thus, Petitioner has failed to demonstrate that the state court's determination that Section 766.013, Florida Statutes is not retroactive is a violation of clearly established federal law.

Furthermore, Petitioner has not shown that his right to due process was violated by

the state court instructing the jury that a homeowner exercising the right to protect his life or property from burglars has a duty to retreat.  As an initial matter, the Court notes that this portion of claim four was not raised as a federal issue on direct appeal from Petitioner's re-sentencing.  (App. B at 53-54. ) Likewise, to the extent the claim was raised in Petitioner's Rule 3.850 motion, the state court found the claim to be procedurally barred. (App. F at 166.)  Thus, this claim is procedurally barred from review by this Court.

Alternatively, even assuming the claim was not procedurally barred, Petitioner has not shown that the trial court committed fundamental error in relation to the self-defense instructions.  Petitioner states that the trial court instructed the jury as follows:

> If defendant was attacked in his own home or on his own premises, he had no duty to retreat and had the right to stand his ground and meet force with force even to the extent of using force likely to cause death . . . if it was necessary to prevent death or great bodily harm to himself or the commission of a forcible felony.

(App. 1 at 18.)  Thus, the jury was instructed that Petitioner did not have a duty to retreat in his home and could use deadly force to prevent the commission of a forcible felony.

Petitioner maintains that the trial court should not have included the "meet force with force" language in the instruction because he could have used force to prevent a burglary even in the absence of the use of force by the victim.  Petitioner relies on *Quaggin v. State*, 752 So. 2d 19, 23 (Fla. 5th DCA 2000), in which the court held that including the "meet force with force" language in the instruction was misleading when the defense was burglary of the home because a homeowner is permitted to use deadly force to prevent the

16

commission of a burglary even if force is not used by the burglar.  Nevertheless, in *Dias v. State,* 812 So. 2d 487, 493 (Fla. 4th DCA 2002), the court refused to apply the holding in *Quaggin*, reasoning that the decision of the *Quaggin* Court was based on the facts of the case.  The *Dias* Court noted that "[b]ecause the burglar [in *Quaggin*] had not used 'force' either in entering or upon Quaggin at the point he was shot, the instruction could have misled the jury and negated his only defense."  *Id*.  The *Dias* Court distinguished the facts in that case from *Quaggin* because Dias' "defense was based upon his belief that the victims were armed. . . .  Therefore, the victims had used force, and the 'meet force with force' instruction did not negate [Dias'] defense."  *Id*.

Like the facts in *Dias*, Petitioner testified that the victim used force.  Petitioner said that someone kicked open his door and screamed, "Where is your black ass?"  Case No. 6:00-cv-455,Orl-22B, Doc. No. 18, App. B at 527-28.)  Petitioner testified that he hid and called 911.  *Id*.  Petitioner then watched as the victim entered his office and went through the contents of his desk.  *Id*. at 529.  Petitioner testified that the victim saw him at which point the victim lunged at Petitioner and the gun Petitioner was holding in his hand went off.  *Id*. at 530.  Thus, Petitioner testified that the victim used force in entering his home and used force against him.  As such, the Court cannot conclude that the "meet force with force" language negated Petitioner's defense, and Petitioner has not demonstrated that the self-defense instructions were improper.  Accordingly, claim three is denied pursuant to

Section 2254(d).[5]

### D.    Claim Four

Petitioner contends that the State withheld material records and exculpatory evidence.    Specifically, Petitioner complains that the State failed to "disclose police documents indicating that two (2) State key witnesses other than Petitioner could have committed the offense. . . ."  (Doc. No. 1 at 24.)

Respondents assert that this claim is procedurally barred from review.  Petitioner raised this claim in his Rule 3.850 motion.  The state court determined that the claim was procedurally barred as successive.  (App. F at 179.)  Thus, absent an exception to the procedural default bar, this claim is barred from review by this Court.

Petitioner has failed to demonstrate either cause or prejudice to overcome the procedural default.   Furthermore, Petitioner has not demonstrated that he is actually innocent.  Accordingly, this claim is procedurally barred and must be denied.[6]

### E.    Claim Five

Petitioner asserts that counsel rendered ineffective assistance by failing to object to

---

[5]The Court notes that Petitioner also alleges in this claim that the trial court did not instruct the jury on second degree murder with a firearm.  However, the information charged Petitioner with second degree murder with a weapon.

[6]Alternatively, the Court notes that Petitioner raised a similar, if not exact claim, in his initial § 2254 petition, which the district court denied pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  *See* Case No. 6:00-cv-455-Orl-22, Doc. No. 41 at 11-12.  Thus, at least portions of this claim have been denied on the merits.  Finally, to the extent claim four includes new allegations of withheld evidence, Petitioner has not established that had such evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different given the evidence presented at trial.

the trial court's failure to obtain and review a presentence investigation report prior to his re-sentencing.  Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland*.  (App. F at 169-70.)  The state court reasoned that a PSI was prepared prior to Petitioner's initial sentencing and there was no requirement pursuant to state law mandating the preparation of a new or updated PSI.  *Id*. at 169.  The state court further determined that even if an updated PSI was required, Petitioner failed to demonstrate that his sentence was illegal.  *Id*.  As such, the state court concluded that Petitioner failed to demonstrate deficient performance or prejudice.  *Id*. at 170.

Petitioner has not established that the state court's determination is contrary to, or an unreasonable application of, *Strickland*.  Petitioner has not cited, nor is this Court aware of, any Florida law requiring the completion or update of a PSI before the trial court may re-sentence a defendant.  Moreover, even assuming such a requirement exists, Petitioner has not shown a reasonable probability that his sentence would have been different had counsel objected to the trial court's failure to obtain and review an updated PSI. Accordingly, claim five is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.    *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing "the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).  When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.  Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Jonathan Steele is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 14th day of September, 2011.

Copies to:

OrlP-1 9/14

Counsel of Record

Jonathan Steele

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE